# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2013AP1918-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against James E. Gatzke, Attorney at Law: |
| | |
| | Office of Lawyer Regulation, |
| |        Complainant-Respondent, |
| |    v. |
| | James E. Gatzke, |
| |        Respondent-Appellant. |

DISCIPLINARY PROCEEDINGS AGAINST GATZKE

| | |
|---|---|
| OPINION FILED: | May 17, 2016 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | February 4, 2016 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | |
|   COUNTY: | |
|   JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   CONCURRED/DISSENTED: | GABLEMAN, J. concurs and dissents, joined by BRADLEY, R.G., J. |
|   DISSENTED: | |
|   NOT PARTICIPATING: | |

ATTORNEYS:

For the respondent-appellant there were briefs filed by *Terry E. Johnson* and *Peterson, Johnson & Murray, S.C.,* Milwaukee, and oral argument by *Terry E. Johnson*.

For the Office of Lawyer Regulation, there were briefs filed by *Paul W. Schwarzenbart.* Oral argument by *Paul W. Schwarzenbart.*

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.   2013AP1918-D

STATE OF WISCONSIN                    :        IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against James E. Gatzke, Attorney at Law:**

**Office of Lawyer Regulation,**

          **Complainant-Respondent,**

     **v.**

**James E. Gatzke,**

          **Respondent-Appellant.**

**FILED**

**MAY 17, 2016**

Diane M. Fremgen
Clerk of Supreme Court

---

     ATTORNEY disciplinary proceeding.    *Attorney's license suspended.*


     ¶1  PER CURIAM.  Attorney James E. Gatzke appeals a report filed by Referee Christine Harris Taylor, concluding that Attorney Gatzke committed 45 counts of professional misconduct and recommending that this court revoke his license to practice law in Wisconsin.  The referee further recommended that Attorney Gatzke make restitution totaling $551,128.32, and that he be

required to pay the full costs of this proceeding, which are $56,879.77, as of February 24, 2016. Attorney Gatzke asserts that many of the referee's findings of fact are clearly erroneous. He also argues that, even assuming that this court finds that he committed some or all of the counts of misconduct found by the referee, a license suspension of less than five months would be an appropriate level of discipline.

¶2 Upon careful review of this matter, we uphold all of the referee's findings of fact and conclusions of law and conclude that a three-year suspension of Attorney Gatzke's license to practice law is an appropriate sanction for his misconduct. We agree with the referee that Attorney Gatzke should be required to make restitution and that he be required to pay the full costs of this proceeding.

¶3 Attorney Gatzke was admitted to practice law in Wisconsin in 1994 and practices in New Berlin. For a time he served as the mayor of New Berlin. He has also been licensed as a real estate broker since 1981. He has no prior disciplinary history.

¶4 On August 22, 2013, the Office of Lawyer Regulation (OLR) filed a complaint against Attorney Gatzke. The referee was appointed on November 5, 2013. The OLR filed an amended complaint on March 11, 2014, and on May 19, 2014, it filed a second amended complaint.

¶5 The bulk of the allegations in the second amended complaint arise out of Attorney Gatzke's representation of P.S. P.S.'s husband, S.W., was an investment advisor who owned a

number of businesses. In late 2004, S.W.'s business partner filed a lawsuit alleging that S.W. had stolen $3.5 million from him. In June 2005, with the litigation and criminal investigations pending, S.W. committed suicide.

¶6 P.S.'s niece, N.S., worked for Attorney Gatzke between 2003 and 2007. Soon after S.W.'s death, P.S. executed an agreement retaining Attorney Gatzke's law firm to represent her. P.S. executed a specific durable power of attorney (POA) naming Attorney Gatzke as her attorney in fact. In the course of representing P.S., Attorney Gatzke learned there were four life insurance policies issued by the Northwestern Mutual Life Insurance Company (NML) insuring S.W., with combined proceeds of $8.5 million, payable on his death.

¶7 In September 2005, following a partial settlement of the litigation involving S.W.'s business partner, NML wired $8,542,230.50 in life insurance proceeds and interest. Over $2.5 million was wired to P.S. via Attorney Gatzke's trust account. The remaining funds went to two of S.W.'s former business partners.

¶8 The OLR's second amended complaint alleged that Attorney Gatzke invested P.S.'s funds in businesses in which he was an investor, primarily real estate developments, without obtaining P.S.'s written consent to the investments after giving her a reasonable opportunity to seek the advice of independent counsel. The second amended complaint also alleged that Attorney Gatzke converted P.S.'s funds, and it alleged that

3

Attorney Gatzke failed to provide P.S. with written accountings or invoices relating to legal work he performed for her.

¶9 In addition, the second amended complaint alleged that at the time of his death, S.W. had a $500,000 life insurance policy with the Jackson National Life Insurance Company (Jackson National). Between 2001 and 2004, the beneficiary of that policy changed from N.K., another business partner of S.W., to A.S., the minor daughter of S.W. and P.S. In December 2004, S.W. had requested Jackson National to change the beneficiary back to N.K., but Jackson National never processed the request because certain forms were not properly completed.

¶10 In July 2005, an attorney representing N.K. wrote to Jackson National claiming entitlement to the full amount of the policy proceeds. Attorney Gatzke wrote to N.K.'s attorney asserting that he represented both P.S. and A.S. The second amended complaint alleged that both P.S. and A.S. had an interest in the prospective settlement of the matter but that Attorney Gatzke did not discuss their individual and potentially differing interests in such a settlement with them, nor did he obtain P.S.'s and A.S.'s written consent to continue the representation following a consultation regarding the conflict.

¶11 In April 2006, Jackson National filed an action in Waukesha County circuit court seeking a court order as to payment of the $500,000. The litigation was resolved by a stipulation in April 2007. The stipulation, which was signed by Attorney Gatzke as attorney for P.S. and A.S., divided the proceeds between N.K., A.S., and P.S. Attorney Gatzke did not

4

seek court approval for the settlement, despite the fact that A.S. was a minor. The Waukesha County clerk of courts disbursed a check in the amount of $325,446.25 to Attorney Gatzke's trust account. Attorney Gatzke issued a $50,000 trust account check payable to his firm for attorney's fees. The remaining funds were deposited to a preexisting brokerage account at Northwestern Mutual Investment Services entitled "Attorney James E. Gatzke, Conservator for P.S." The second amended complaint alleged that Attorney Gatzke did not provide either P.S. or A.S. with written notice of his receipt of the funds.

¶12 The second amended complaint also alleged that Attorney Gatzke engaged in multiple counts of professional misconduct with respect to his recordkeeping and handling of his trust account. The second amended complaint alleged that Attorney Gatzke failed to hold client funds in trust and converted those funds to his own purposes. The second amended complaint also alleged that Attorney Gatzke allowed his trust account to become overdrawn and as a result of those overdrafts, client funds were converted.

¶13 Specifically, the second amended complaint alleged that Attorney Gatzke violated the following supreme court rules:

¶14 Former SCR 20:1.7(b) (effective through July 1, 2007) (count twenty):

> A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless: (1) the lawyer reasonably believes the representation will not be adversely affected; and (2) the client consents in writing after consultation.

When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

¶15  Former SCR 20:1.8(a) (effective through July 1, 2007)

(counts four, five, nine, fourteen and twenty-four):

A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless: (1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client; (2) the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and (2) the client consents in writing thereto.

¶16  SCR 20:1.15(b)(3) (effective July 1, 2004) (counts

thirty-one, thirty-five, and thirty-eight):

No funds belonging to the lawyer or law firm, except funds reasonably sufficient to pay monthly account service charges, may be deposited or retained in a trust account.

¶17  SCR 20:1.15(b)(4) (effective July 1, 2004) (count

one):

Unearned fees and advanced payments of fees shall be held in trust until learned by the lawyer, and withdrawn pursuant to SCR 20:1.16(g). Funds advanced by a client or 3rd party for payment of costs shall be held in trust until the costs are incurred.

¶18  SCRs 20:1.1.15(f)(1)a.4 and b. (effective July 1,

2004) (count forty-five):

(1) Demand accounts. Complete records of a trust account that is a demand account shall include a transaction register; individual client ledgers; a ledger for account fees and charges, if law firm funds are held in the account pursuant to sub. (b)3; deposit records; disbursement records; monthly statements; and reconciliation reports, subject to all of the following:

a. Transaction register. The transaction register shall contain a chronological record of all account transactions and shall include all of the following: . . . .

4. the identity of the client for whom funds were deposited or disbursed;

b. A subsidiary ledger shall be maintained for each client or matter for which the lawyer receives trust funds, and the lawyer shall record each receipt and disbursement of that client's funds and the balance following each transaction. A lawyer shall not disburse funds form the trust account that would create a negative balance with respect to any individual client or matter.

¶19 SCR 20:1.15(f)(1)b (effective July 1, 2004) (counts thirty-nine, forty and forty-one):

A subsidiary ledger shall be maintained for each client or matter for which the lawyer receives trust funds, and the lawyer shall record each receipt and disbursement of that client's funds and the balance following each transaction. A lawyer shall not disburse funds from the trust account that would create a negative balance with respect to any individual client or matter.

¶20 SCR 20:1.15(f)(1)(e)(4)b (effective July 1, 2004) (count forty-five):

No deposits or disbursements shall be made to or from a trust account by a telephone transfer of funds. This section does not prohibit wire transfers.

¶21 SCR 20:1.15(g)(1) (effective July 1, 2004) (counts two and twenty-two):

At least 5 business days before the date on which a disbursement is made from a trust account for the purpose of paying fees, with the exception of contingent fees, the lawyer shall deliver to the client in writing all of the following: a. an itemized bill or other accounting showing the services rendered; b. notice of the amount owed and the anticipated date of the withdrawal; and c. a statement of the balance of the client's funds in the lawyer trust account after the withdrawal.

7

¶22 SCR 20:1.15(j)(1) (effective July 1, 2004) (counts seven, twelve and fifteen):

A lawyer shall hold in trust, separate from the lawyer's own funds or property, those funds or that property of clients or 3rd parties that are in the lawyer's possession when acting in a fiduciary capacity that directly arises in the course of or as a result of a lawyer-client relationship. When a lawyer is in possession of fiduciary property of a probate estate, the lawyer shall maintain the property in a separate account subject to the requirements of SCR 10:1.15(j).

¶23 SCR 20:8.4(c) (counts one, four, six, eight, nine, ten, eleven, thirteen, sixteen, seventeen, twenty-three, twenty-four, twenty-five, twenty-nine, thirty-two, thirty-three, thirty-four, thirty-five, thirty-six, thirty-seven, forty, forty-one, forty-three, and forty-four):

It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

¶24 SCR 20:8.4(f) (count twenty-one):

It is professional misconduct for a lawyer to violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers.

¶25 SCR 22.03(6) as enforced by 20:8.4(h) (counts twenty-six, twenty-seven and twenty-eight):

SCR 22.03(6): In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance.

SCR 20:8.4(h): It is professional misconduct for a lawyer to . . . . fail to cooperate in the investigation of a grievance filed with the office of lawyer regulation as required by SCR 21.15(4), SCR 22.001(9)(b), SCR 22.03(2), SCR 22.03(6), or SCR 22.04(1) . . .

8

¶26 SCR 20:1.15(b)(1) (effective July 1, 2004) (counts sixteen, seventeen, nineteen, twenty-nine, thirty-two, thirty-three, thirty-four, thirty-five, thirty-six, thirty-seven, thirty-nine, forty, forty-one, forty-three, and forty-four):

> A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and 3rd parties that is in the lawyer's possession in connection with a representation. All funds of clients and 3rd parties paid to a lawyer or law firm in connection with a representation shall be deposited in one or more identifiable trust accounts.

¶27 SCR 20:1.15(d)(1) (effective July 1, 2004) (counts eighteen, thirty, and forty-two):

> Upon receiving funds or other property in which a client has an interest, or in which the lawyer has received notice that a 3rd party has an interest identified by a client, court order, judgment, or contract, the lawyer shall promptly notify the client or 3rd party in writing. Except as stated in this rule or otherwise permitted by law or by agreement with the client, the lawyer shall promptly deliver to the client or 3rd party any funds or other property that the client or 3rd party is entitled to receive.

¶28 In March 2015, the parties filed a partial stipulation of facts. A four-day evidentiary hearing was held before the referee in April 2015. Attorney Gatzke testified that he recommended that P.S. invest the proceeds from her late husband's life insurance policies in investments at NML, such as mutual funds, but that P.S. told him she was skeptical of investments in the stock market because she had seen what happened to similar investments that her husband handled. Attorney Gatzke testified P.S. told him she felt confident having tangible investments such as real estate and that she did not like paper investments such as mutual funds. He said P.S.

knew of his prior successful experience with real estate investments and wanted to be part of it. Attorney Gatzke said P.S. told him she did not want to be publicly listed as the owner of the investments because she was concerned that her late husband's creditors would find out what she owned and try to take it.

¶29 Attorney Gatzke testified there were net profits from the real estate properties in 2007 and 2008 and those went back into the projects. He said as he would sell condominium units and deposit the money back into his trust account, funds would be made available for P.S. and he would write her checks.

¶30 With respect to the Jackson National insurance policy, Attorney Gatzke said he did not obtain a written consent from P.S. and A.S. to represent both of them and he took no steps to have a guardian ad litem appointed for A.S. He noted that the circuit court approved the settlement in the Jackson National case and the court never suggested there was a need for a guardian ad litem.

¶31 Attorney Gatzke said he provided P.S. with transaction logs that described her investments and that he would typically meet with her once a week between 2006 and 2010. He said P.S. moved to Arizona and after the move he would talk to her on the phone about her investments. Attorney Gatzke acknowledged that in late 2009 his trust account ran a deficit because he had overpaid expenses on behalf of P.S. He said in order to bring the trust account back into balance, he had someone loan P.S. $140,000 and put that money back into the trust account.

10

¶32 P.S. testified she never asked that the $2.5 million initially on deposit at NML be removed from NML. She denied telling Attorney Gatzke she was concerned about investing in the stock market because of how her late husband had dealt with his investment clients.

¶33 Mary Hoeft Smith, the OLR's trust account program administrator, testified at length about her review of Attorney Gatzke's records, and she explained how she calculated the amounts of restitution due to P.S. and A.S.

¶34 P.S's niece testified that after P.S.'s husband died, P.S. seemed to need a lot of help with her financial affairs and paying bills. P.S.'s niece testified that Attorney Gatzke would write P.S. a trust account check every month for her living expenses. P.S.'s niece said she recalled sitting in on meetings where P.S.'s legal business was discussed and in the course of those meetings there was discussion about the real estate investments P.S. was involved in with Attorney Gatzke.

¶35 Attorney Gatzke's office manager testified that she would make deposits into the firm's trust account and would prepare checks as directed by Attorney Gatzke. She said on two occasions she warned Attorney Gatzke that funds in P.S.'s account were getting low and there would not be sufficient funds to make more disbursements to P.S. Attorney Gatzke's response was that he did not think the office manager's numbers were accurate. The office manager said P.S. would usually come to the office to pick up a $15,000 check for her monthly expenses written from the firm's trust account.

11

¶36 The referee issued her report and recommendation on August 27, 2015. The referee found that the OLR had met its burden of proof with respect to all 45 counts of misconduct alleged in the second amended complaint. The referee concluded that revocation of Attorney Gatzke's license to practice law was warranted because the misconduct was serious and there was a clear need to impress upon him the seriousness of his misconduct and to protect the public. The referee found that Attorney Gatzke converted a significant amount of funds belonging to multiple clients over a period of years. The referee said Attorney Gatzke claimed ignorance of trust account rules, but ignorance of an attorney's duties as a trustee of client funds is not a defense. The referee found that Attorney Gatzke failed to document his business transactions with P.S. and failed to obtain her written, informed consent to his personal conflict of interest in investing with a client in complex and speculative transactions.

¶37 The referee also found that Attorney Gatzke disregarded the conflict of interest in representing both P.S. and A.S. in the Jackson National lawsuit. The referee said Attorney Gatzke's misconduct evinces a disregard for the rules of conduct and a disregard for client welfare. The referee noted that Attorney Gatzke acknowledged that he failed to comply with the technical procedural rules regarding his firm's trust account. The referee said Attorney Gatzke's behavior far exceeded mere sloppiness. The referee said Attorney Gatzke's trust account records were in a serious state of disarray and

12

the factual findings detailed numerous discrepancies and negative balances.  The referee found that Attorney Gatzke used client funds to pay personal and firm obligations.  The referee said, "he took advantage of unsophisticated clients, particularly [P.S.], and used her money as his personal checkbook and to support his interests in commercial real estate.  These are not slight miscalculations or technical errors, but egregious violations of supreme court rules.  This behavior is misleading and harmful."  The referee concluded that Attorney Gatzke's intentional and reckless disregard of supreme court rules necessitated revocation of his license to practice law.

¶38  The referee also adopted the OLR's computation of the amount of restitution due to P.S. and A.S., and found that Attorney Gatzke should be responsible for the full costs of the proceeding.  The referee said in the event Attorney Gatzke is reinstated to the practice of law, the OLR should monitor all trust account activity under Attorney Gatzke's control for a period of three years.

¶39 Attorney Gatzke has appealed.  He admits that he made mistakes in recordkeeping and the handling of his trust account, but he characterizes these failings as largely technical in nature.  He strenuously argues that the OLR failed to meet its burden of proof that he converted any of P.S.'s funds or any other client's funds.  He says to the extent that P.S. lost any money associated with her investment relationship with him, that was a result of the risk inherent in her real estate investments

13

with Attorney Gatzke, a risk which caused losses to both of them because of the downturn in the economy.  He argues that P.S. is not a reliable witness and, by contrast, he was a very reliable witness.  He complains that the OLR failed to call several witnesses at the evidentiary hearing, including P.S.'s daughters, who were present for some meetings P.S. had with Attorney Gatzke and who presumably could have shed light on the inconsistencies between P.S.'s deposition and hearing testimony and P.S.'s failure to recall the facts and circumstances of Attorney Gatzke's representation and her involvement with Attorney Gatzke in investments.  Attorney Gatzke argues the referee should have concluded that if P.S.'s daughters had testified, their testimony would have been adverse to the OLR.

¶40 Attorney Gatzke also argues that he and independent witnesses confirmed he gave P.S. several banker's boxes of documents near the end of his representation of her but P.S. produced only one banker's box of materials as part of these proceedings.  Attorney Gatzke says that records contained in the materials he produced to P.S. were no longer available to be used in his defense because she failed to produce them.  He argues the referee should have concluded that those materials existed and would not have supported P.S.'s accusations against him.

¶41 Attorney Gatzke argues that because the OLR failed to meet its burden of proving that he converted any of P.S.'s funds, he should not be responsible for restitution to P.S. Attorney Gatzke argues that he credibly testified that he was

14

authorized to make payments to invest in real estate holdings on behalf of P.S., that he explained everything about the investments to P.S., and P.S. was fully aware that the payments were being made on her behalf for investments she approved and wanted to have made. He argues the referee's conclusion that he should pay restitution to P.S. relies solely on P.S.'s credibility, and he asserts P.S.'s position that she was unaware of the investments simply cannot be believed. Attorney Gatzke argues once the investments are properly understood, it is apparent there is no basis for a restitution award to P.S. and in fact, P.S. was overpaid some $76,000.

¶42 Attorney Gatzke also argues that he should not be responsible to A.S. for any restitution stemming from the Jackson National proceeds. He says the proceeds obtained from Jackson National were ultimately disbursed to P.S. and she subsequently used that money for her own personal expenses and benefit. Attorney Gatzke argues in the event those proceeds belonged to A.S., P.S. was unjustly enriched by receiving and using them for her own benefit. Attorney Gatzke also argues that there is a dispute as to whether P.S. or A.S. would be entitled to the proceeds and there is a question of who should be responsible to pay A.S. in the event she is entitled to some of the proceeds. Attorney Gatzke says even if he bears some responsibility to pay A.S., P.S. certainly bears responsibility as well. He suggests that the complete picture of who bears such responsibility should be addressed in a separate civil proceeding in which all parties interested can be joined and the

15

extent of their liability and entitlement to any proceeds can be adjudicated.

¶43 Attorney Gatzke strenuously argues that the referee's recommendation for license revocation is wholly unwarranted.  He points out that none of the counts asserted by the OLR allege that Attorney Gatzke's legal representation was deficient in any matter.  He asserts the fact that he has not been previously disciplined, that his entire career has been an effort to benefit his community, and that he has been extremely cooperative with the OLR throughout the disciplinary process are significant mitigating factors that the referee should have weighed in determining what discipline is appropriate.  He suggests that a suspension of less than five months is the maximum discipline warranted.  He agrees that it would be appropriate for the court to require him to have his trust account reviewed by an accountant on a quarterly basis for a period of one year.

¶44 The OLR argues that Attorney Gatzke has failed to show that any of the referee's findings of fact are clearly erroneous.  The OLR also notes that where testimony is conflicting, the referee is the ultimate arbiter of credibility. See In re Disciplinary Proceedings Against Lister, 2010 WI 108, ¶32, 329 Wis. 2d 289, 787 N.W.2d 820.  The OLR asserts that Attorney Gatzke's attack on P.S.'s credibility does not show that any of the referee's findings of fact are clearly erroneous, and it says an assessment of Attorney Gatzke's

16

credibility also does not show that any of the findings are clearly erroneous.

¶45 While Attorney Gatzke argues that the referee should have drawn a negative inference from the fact that important witnesses, such as P.S.'s daughters, were not called at the evidentiary hearing, the OLR says Attorney Gatzke waived this issue by failing to raise it at trial. The OLR also asserts Attorney Gatzke failed to show that OLR controlled those witnesses, and it says if Attorney Gatzke seriously believed P.S.'s daughters had information material to his defense, he had every opportunity to conduct discovery and depose them. The OLR points out that in fact Attorney Gatzke did depose one of P.S.'s daughters. It says because the daughter is a resident of Arizona, Attorney Gatzke could have used that deposition at trial, but chose not to do so.

¶46 The OLR also says that Attorney Gatzke's claims about the alleged missing boxes of documents is nothing more than another diversionary "straw man" argument. The OLR says Attorney Gatzke makes no showing, beyond mere speculation, that P.S. received and destroyed any records and more importantly, Attorney Gatzke fails to show that the materials he speculates were in the "missing boxes" have any bearing on the conversion claims alleged in the second amended complaint. The OLR goes on to argue that there was ample evidence before the referee to support the referee's findings of conversion. The OLR notes that this court has described conversion as:

> The unauthorized use of a client's funds for the lawyer's own purpose. It includes temporary use, and it extends to use that does not result in personal gain or benefit to the lawyer. Paying one client out of money due another, keeping an unearned advanced fee, holding onto unused escrow funds, and applying client funds to the client's bill are all examples of conversion.

In re Disciplinary Proceedings Against Mulligan, 2015 WI 96, ¶36, 365 Wis. 2d 43, 870 N.W.2d 233.

¶47 The OLR asserts there is overwhelming evidence in this case that Attorney Gatzke converted client funds systematically over a period of years and the misconduct cannot be explained away by ignorance or sloppy recordkeeping. The OLR says the referee appropriately noted that the ABA standards for imposing lawyer sanctions provide that "disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client," and where "a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice." ABA Standards, §§ III.C.4.11 and III.C.5.11(b). The OLR says in concluding that the multiple instances of conversion of client funds required revocation, the referee pointed to aggravating factors, including a pattern of misconduct, multiple offenses, refusal to acknowledge wrongdoing, the vulnerability of the victims, together with Attorney Gatzke's substantial experience in the practice of law and his indifference to making restitution. Thus, the OLR argues that revocation is an appropriate sanction.

18

¶48 The OLR also asserts that this court should adopt the referee's recommendation as to restitution. It notes that in In re Disciplinary Proceedings Against Nussberger, 2009 WI 103, ¶20, 321 Wis. 2d 576, 775 N.W.2d 525, this court acknowledged the OLR's policy to seek restitution where the grievant's or respondent's rights in a collateral proceeding will not likely be prejudiced; the funds to be restored do not constitute incidental or consequential damages; the funds to be restored were in the respondent lawyer's direct control; and there is a reasonably ascertainable amount. The OLR argues that these factors are satisfied both as to P.S. and as to A.S.

¶49 A referee's findings of fact are affirmed unless clearly erroneous. Conclusions of law are reviewed de novo. See In re Disciplinary Proceedings Against Eisenberg, 2004 WI 14, ¶5, 269 Wis. 2d 43, 675 N.W.2d 747. The court may impose whatever sanction it sees fit, regardless of the referee's recommendation. See In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶50 After careful review of this matter, we conclude that there has been no showing that any of the referee's findings of fact are clearly erroneous. Accordingly, we adopt them. We also agree with the referee's conclusions of law that Attorney Gatzke violated all of the supreme court rules set forth above.

¶51 Turning to the appropriate level of discipline, although Attorney Gatzke's misconduct is serious, we do not find that it rises to the level of requiring revocation of his

license to practice law in Wisconsin. Instead, we conclude that a lengthy suspension is an appropriate sanction.

¶52 Attorney Gatzke's recordkeeping and his cavalier handling of his trust account, which included overdrafts and comingling non trust account funds to bring it back into balance, are serious deficiencies. The recordkeeping and trust account violations were not mere technical problems, as Attorney Gatzke has tried to portray them.

¶53 Much more troubling than the recordkeeping and trust account deficiencies are Attorney Gatzke's failure to obtain written conflict waivers before entering into business transactions with P.S. and his conversion of P.S.'s funds. We acknowledge that Attorney Gatzke's lack of previous disciplinary history warrants some consideration. However, the number of counts of misconduct at issue in this case requires a serious sanction. We find this case somewhat analogous to In re Disciplinary Proceedings Against Cooper, 2007 WI 37, 300 Wis. 2d 61, 729 N.W.2d 206. In Cooper, an attorney who was found to have committed multiple violations of SCR 20:8.4(c) as well as multiple trust account violations received a three-year suspension. We find a three-year suspension to be an appropriate sanction in this case as well.

¶54 Upon careful consideration, we agree with the referee that Attorney Gatzke should be required to make restitution, in the amounts sought by the OLR, to both P.S. and A.S. We note again that we will affirm the referee's findings of fact unless they are clearly erroneous on the basis of the record before us.

20

The referee's findings of fact as to restitution have not been shown to be clearly erroneous. We recognize that Attorney Gatzke disputes the referee's restitution award, particularly the amount owed to A.S. We emphasize that our holding as to restitution is not intended to preclude a future civil suit to determine if someone other than Attorney Gatzke should be responsible for the restitution awarded to A.S. However, the only parties before us in this proceeding are the OLR and Attorney Gatzke, and given the applicable standard of review, we cannot resolve the potential claims between any other parties. We also agree that Attorney Gatzke should be required to pay the full costs of this disciplinary proceeding, as is the court's general practice.

¶55 Finally, we agree that in the event his license to practice law is reinstated, Attorney Gatzke should be required to submit to trust account monitoring by the OLR for a period of three years.

¶56 IT IS ORDERED that the license of James E. Gatzke to practice law in Wisconsin is suspended for a period of three years, effective June 20, 2016.

¶57 It IS FURTHER ORDERED that James E. Gatzke comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶58 IT IS FURTHER ORDERED that within 60 days of the date of this order, James E. Gatzke shall make restitution to P.S. in the amount of $275,682.07 and to A.S. in the amount of $275,446.25.

21

¶59 IT IS FURTHER ORDERED that within 60 days of the date of this order, James E. Gatzke pay to the Office of Lawyer Regulation the costs of this proceeding, which are $56,879.77. If the costs are not paid within the time specified, and absent a showing to this court of his inability to pay the costs within that time, the license of James E. Gatzke to practice law in Wisconsin shall remain suspended until further order of the court.

¶60 IT IS FURTHER ORDERED that the restitution specified above is to be completed prior to paying costs to the Office of Lawyer Regulation.

¶61 IT IS FURTHER ORDERED that in the event James E. Gatzke's license to practice law is reinstated, he should be required to submit to trust account monitoring by the Office of Lawyer Regulation for a period of three years.

¶62 IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement. See SCR 22.29(4)(c).

¶63 MICHAEL J. GABLEMAN, J. (*concurring in part, dissenting in part*).  I concur in the portion of the opinion suspending Attorney Gatzke's license to practice law for three years, imposing full costs, and requiring him, upon reinstatement, to submit to trust account monitoring.  I dissent from the portion of the opinion ordering Attorney Gatzke to make restitution to P.S. and A.S.  I believe the issue of restitution should be addressed in a separate civil proceeding.

¶64  I am authorized to state that Justice REBECCA G. BRADLEY joins this concurrence/dissent.