# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE No.: | 2024AP156-D |

| | |
|---|---|
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Kevin R. Rosin, Attorney at Law: |
| | Office of Lawyer Regulation, |
| |       Complainant, |
| |    v. |
| | Kevin R. Rosin, |
| |       Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST ROSIN

| | |
|---|---|
| OPINION FILED: | July 2, 2024 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | |
|   COUNTY: | |
|   JUDGE: | |

| | |
|---|---|
| JUSTICES: | |

Per curiam.

| | |
|---|---|
| ATTORNEYS: | |

NOTICE

This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.

No. 2024AP156-D

STATE OF WISCONSIN     :     IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Kevin R. Rosin, Attorney at Law:**

**Office of Lawyer Regulation,**

        **Complainant,**

    **v.**

**Kevin R. Rosin,**

        **Respondent.**

**FILED**

**JUL 2, 2024**

Samuel A. Christensen
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶1 PER CURIAM. We review a stipulation filed by the Office of Lawyer Regulation (OLR) and Attorney Kevin R. Rosin pursuant to Supreme Court Rule (SCR) 22.12.[1] In the stipulation,

---

[1] SCR 22.12 provides:

(1) The director may file with the complaint a stipulation of the director and the respondent to the

(continued)

facts, conclusions of law regarding misconduct, and discipline to be imposed, together with a memorandum

Attorney Rosin does not contest that he committed two acts of professional misconduct as alleged by the OLR in its complaint against him. Attorney Rosin also does not contest that a six-month suspension of his Wisconsin law license, imposed

---

in support of the stipulation. The respondent may file a response to the director's memorandum within 14 days of the date of filing of the stipulation. The supreme court may consider the complaint and stipulation without the appointment of a referee, in which case the supreme court may approve the stipulation, reject the stipulation, or direct the parties to consider specific modifications to the stipulation.

(2) If the supreme court approves a stipulation, it shall adopt the stipulated facts and conclusions of law and impose the stipulated discipline.

(3) If the supreme court rejects a stipulation, a referee shall be appointed and the matter shall proceed as a complaint filed without a stipulation.

(3m) If the supreme court directs the parties to consider specific modifications to the stipulation, the parties may, within 20 days of the date of the order, file a revised stipulation, in which case the supreme court may approve the revised stipulation, adopt the stipulated facts and conclusions of law, and impose the stipulated discipline. If the parties do not file a revised stipulation within 20 days of the date of the order, a referee shall be appointed and the matter shall proceed as a complaint filed without a stipulation.

(4) A stipulation rejected by the supreme court has no evidentiary value and is without prejudice to the respondent's defense of the proceeding or the prosecution of the complaint.

consecutively to his one-year suspension that recently concluded on May 25, 2024,[2] is appropriate discipline for his misconduct.

¶2 Upon careful review of the matter, we approve the stipulation and suspend Attorney Rosin's law license for six months, imposed consecutively to his recently expired suspension. Although we do not order restitution, we condition the reinstatement of Attorney Rosin's law license on his satisfaction of a judgment entered in his former law firm's civil lawsuit against him in connection with the misconduct described below. Because this matter has been resolved by a stipulation under SCR 22.12 without the need for the appointment of a referee, we impose no costs on Attorney Rosin.

¶3 The facts of this disciplinary matter, as stipulated by Attorney Rosin, are as follows. Attorney Rosin was admitted to the practice of law in Wisconsin in May 2004. He does not have an address on file with the State Bar of Wisconsin. The most recent address known to the OLR for Attorney Rosin is in Cedarburg, Wisconsin. Attorney Rosin's disciplinary history consists of a one-year license suspension, effective May 25, 2023. See Disciplinary Proceedings Against Rosin, 2023 WI 32, 407 Wis. 2d 1, 988 N.W.2d 681 ("Rosin I"). We discuss this case more fully below.

---

[2] Although Attorney Rosin's one-year suspension concluded on May 25, 2024, he has not regained his license to practice law in Wisconsin. That will require him to successfully complete the formal reinstatement process. See SCR 22.28(3).

¶4 As of November 2020, Rosin was employed by an intellectual property law firm in Wisconsin that we will refer to as "Firm 1." Attorney Rosin's employment with Firm 1 required him to be a full-time employee and to bill all legal and patent-related services provided during his employment through Firm 1. Attorney Rosin received a base salary of $110,000 annually from Firm 1, plus quarterly bonuses based on productivity. Firm 1's bonus schedule provided that bonuses earned for services provided or collections received during the third quarter would be paid on December 15, 2020.

¶5 Firm 1's employee handbook, which was provided to all employees, stated that outside employment at another law firm was forbidden. It also required employees to notify Firm 1's management of any outside employment, and it provided that Firm 1's management reserved the right to determine if the outside employment would cause a conflict of interest.

¶6 Firm 1 also had a strict conflicts check policy. This policy required all firm attorneys to allow the firm to perform a conflicts check before any substantive conversations with a client or performing any work for a new client. Required conflicts checks could not be performed unless Attorney Rosin notified Firm 1 of any prospective client for whom he intended to provide services.

¶7 Attorney Rosin's employment agreement with Firm 1 provided that he would forfeit any quarterly bonuses based on production or other compensation above his actual wages for the hours worked if he left his employment with Firm 1 without

4

giving, and working throughout, a one-month period of advance notice. The employment agreement also provided that, if Attorney Rosin left his employment with Firm 1, he needed to work diligently toward a smooth transition and fulfill the required notice period in order to receive any quarterly bonus or other compensation beyond the salary for his actual hours worked during the notice period.

¶8 A law firm we will refer to as "Firm 2" is an intellectual property law firm located in Illinois. On approximately November 6, 2020, Attorney Rosin began speaking with representatives of Firm 2 about leaving his employment with Firm 1 and becoming an employee of Firm 2. On November 11, 2020, Firm 2 made Attorney Rosin an offer of employment.

¶9 Attorney Rosin formally accepted Firm 2's offer and signed an offer letter on November 13, 2020. Attorney Rosin's employment agreement with Firm 2 provided that he was a "full-time" employee with Firm 2 and required Attorney Rosin to provide and bill all legal and patent-related services provided during his employment through Firm 2.

¶10 On November 16, 2020, Attorney Rosin proposed to Firm 2 that he begin his employment on December 2, 2020. Firm 2 accepted Attorney Rosin's proposed December 2, 2020 start date. The start date was Attorney Rosin's choice, and was not negotiated by or the result of pressure from Firm 2 for Attorney Rosin to start on that date.

¶11 On November 17, 2020, Attorney Rosin told the attorney-owner of Firm 1 that he had received a job offer from

another firm and that he was considering that offer. Between November 17 and 30, 2020, Attorney Rosin did not tell the attorney-owner of Firm 1 that he had had already accepted employment with Firm 2, that he had already signed Firm 2's offer letter, or that he had agreed to start employment with Firm 2 on December 2, 2020.

¶12 After business hours on November 30, 2020, Attorney Rosin removed his personal belongings from Firm 1's office. On the evening of November 30, 2020, Attorney Rosin sent an email to the attorney-owner of Firm 1 giving written notice of the termination of his employment with the firm. Attorney Rosin wrote that he would work through December 17, 2020, asserting that working through December 17, 2020, would provide Firm 1 with a full month of notice of his planned departure.

¶13 Attorney Rosin worked remotely for Firm 1 during the period of November 30, 2020, to December 16, 2020, and went into the office only for part of the day on December 17, 2020. Attorney Rosin worked this largely remote schedule during this time period even though Firm 1's employees were generally required to work from its office, and even though he had rarely worked remotely prior to November 30, 2020. Attorney Rosin did not tell anyone at Firm 1 that he intended to work this largely remote schedule during this period. Instead, Attorney Rosin told Firm 1 staff several times during that period to mark him as working remotely on an ad hoc, day-to-day basis.

¶14 Meanwhile, Attorney Rosin began his employment with Firm 2 on December 2, 2020. Between December 2 and 17, 2020,

Attorney Rosin was simultaneously employed by both Firm 1 and Firm 2; he drew his salary from Firm 1 and his monthly draw toward compensation from Firm 2 for this period. He did not tell anyone associated with either firm that he was or intended to be simultaneously employed by both firms.

¶15 Neither Firm 1 nor Firm 2 would have authorized Attorney Rosin to violate the firms' respective policies against outside employment to be simultaneously employed by both firms. In addition, both firms were concerned that simultaneous employment, like Attorney Rosin's, would prevent them from conducting adequate conflicts checks. For its part, Firm 1's conflicts check procedures required its staff to screen for conflicts not only by client, but by the subject matter of the representation or patent. Attorney Rosin could not have effectively performed such a conflicts check himself because he would not have known the subject matter of all representations and all patents for clients of Firm 1, especially clients and matters for which other employees of Firm 1 were responsible, which could include hundreds of patent applications for some clients.

¶16 At Firm 1, Attorney Rosin had the option of keeping work for himself if he desired, or assigning it to another firm attorney. Attorney Rosin therefore had control over how much work he performed for Firm 1 between December 2 and 17, 2020. Between December 2 and 17, 2020, Attorney Rosin logged only 21.80 hours of work for Firm 1. During this time period, he failed to perform work on client matters that he had taken on

7

prior to November 17, 2020, and that he could have completed prior to December 17, 2020.

¶17 Attorney Rosin failed in other ways to properly finish his work at Firm 1. He was supposed to review specific physical files to facilitate the transition of work to other staff prior to December 17, 2020, but he failed to do so. Also, prior to December 17, 2020, Attorney Rosin deleted his entire email box at Firm 1, including all subfolders, sent items, and deleted items. Doing so violated Firm 1's "Email, Internet, and Computer Use Policy," which Attorney Rosin had signed on March 26, 2019.

¶18 Firm 1 paid Attorney Rosin bonuses based on its belief that he remained a full-time employee of Firm 1 through December 17, 2020, and that he had not started his employment with a competing employer prior to that date. In May 2023, Firm 1 filed a lawsuit against Attorney Rosin, claiming the firm had suffered damages of not less than $32,515.31 due to Attorney Rosin's failure to comply with his contractual obligations to provide one-month notice and to work diligently for Firm 1 during that month. In July 2023, Attorney Rosin served on Firm 1 an offer of judgment, allowing Firm 1 to take a judgment against Attorney Rosin for $32,515.31, plus accrued interest at the rate of five percent, and statutory costs. Later that same month, Firm 1 accepted the offer of judgment.

¶19 On April 25, 2023, this court issued its decision in Rosin I. That case concerned similar misconduct that Attorney Rosin committed after joining Firm 2. Among other things,

8

Attorney Rosin formed a new law firm during his employment with Firm 2; solicited a client of Firm 2 to become a client of his new firm while still employed by Firm 2; provided and billed for legal services to that client outside of Firm 2 while still employed by Firm 2; and made misrepresentations to Firm 2 when initially confronted with questions about his actions. Rosin I, 407 Wis. 2d 1, ¶¶11-12, 16.

¶20 When the attorney-owner of Firm 1 read Rosin I, he realized that Attorney Rosin had been simultaneously employed by both Firm 1 and Firm 2 in December 2020. The attorney-owner then filed the grievance with the OLR that gave rise to the two misconduct claims that the OLR brought against Attorney Rosin in its complaint, which it filed on January 30, 2024. Those two claims are as follows:

> **Count 1:** By engaging in the course of conduct that included allowing both [Firm 1] and [Firm 2] to believe he was a full-time and exclusive employee of each firm between December 2 and 17, 2020, failing to tell either firm of his simultaneous employment by both firms, and/or misleading one or both firms as to the simultaneous employment, [Attorney] Rosin violated SCR 20:8.4(c).[3]

> **Count 2:** By engaging in the course of conduct that included allowing both [Firm 1] and [Firm 2] to believe he was a full-time and exclusive employee of each firm between December 2 and 17, 2020, failing to tell either firm of his simultaneous employment by both firms, and/or misleading one or both firms as to the simultaneous employment, [Attorney] Rosin breached his fiduciary duties to both firms, and his duty of

---

[3] SCR 20:8.4(c) provides: "It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

honesty in his professional dealings with both firms, thereby violating a standard of conduct established by the Supreme Court of Wisconsin in <u>Disciplinary Proceedings Against Shea</u>, 190 Wis. 2d 560, 527 N.W.2d 314 (1995), enforced via SCR 20:8.4(f).[4]

¶21 Attorney Rosin did not file an answer to the OLR's complaint. In March 2024, however, Attorney Rosin entered into a stipulation and no-contest plea to the complaint. Attorney Rosin stipulated to all of the facts alleged in the complaint; to the two counts of misconduct alleged in the complaint; and to the imposition of a six-month suspension of his Wisconsin law license to run consecutively to the one-year suspension issued in <u>Rosin I</u>.

¶22 In the stipulation, Attorney Rosin agrees that this court may use the allegations of the disciplinary complaint as an adequate factual basis for a determination of misconduct. Attorney Rosin also agrees that the stipulation is not the result of plea bargaining, but the result of his voluntary decision to not further contest this matter. Attorney Rosin also agrees that he fully understands the misconduct allegations, his rights to contest this matter, and the ramifications of his entry into the stipulation. Attorney Rosin states that he fully understands his right to consult with counsel and has consulted with counsel about this matter.

---

[4] SCR 20:8.4(f) provides: "It is professional misconduct for a lawyer to violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers."

Attorney Rosin also represents that his entry into the stipulation is made knowingly and voluntarily.

¶23 In its memorandum in support of the stipulation, the OLR submits that a six-month suspension is appropriate because, had it known of the allegations from the attorney-owner of Firm 1 during the disciplinary proceedings that resulted in the Rosin I decision, it would have sought a year-and-a-half suspension of Attorney Rosin's law license rather than the one-year suspension to which the parties stipulated. The OLR explains that in Rosin I, it weighed as a mitigating factor Attorney Rosin's acceptance of responsibility for his actions and his expression of remorse. The OLR concedes that, given the misconduct at issue here, its assessment of Attorney Rosin's contrition in Rosin I was inaccurate——while he appeared to be remorseful regarding what appeared to be an isolated example of bad decision-making, he in fact had committed essentially the same misconduct in the past. The OLR explains that had it been aware of that fact, it would have assessed Attorney Rosin's misconduct to be more akin to that in In Re Disciplinary Proceedings Against Hotvedt, 2016 WI 93, 372 Wis. 2d 68, 888 N.W.2d 393. There, we imposed an 18-month license suspension on an attorney who converted over $173,000 in funds belonging to his law firm by writing-off fees owed to the firm, depositing client fee payments directly into his own personal bank account rather than depositing the fees into the firm account, and establishing a consulting firm for the purpose of converting client fees owed to the firm. Id., ¶¶11, 17. The attorney had no disciplinary

history but failed to cooperate with the OLR's investigation. Id., ¶¶3, 11, 17. Consistent with the 18-month suspension imposed in Hotvedt, the OLR asks that the court issue a six-month suspension of Attorney Rosin's Wisconsin law license that would run consecutively to the one-year suspension issued in Rosin I.

¶24 The facts and law readily support this requested discipline. Today is the second time in roughly the past year that we must consider suspending Attorney Rosin for playing fast and loose with the truth of the circumstances of his employment. As in Rosin I, these actions were transparently unprofessional——the most basic ethical duty of an attorney is to act with honesty, and simultaneously working for and collecting pay from two unsuspecting law firms that had prohibited outside employment, as Attorney Rosin did here, is patently dishonest. Had we been aware when deciding Rosin I of the misconduct now considered, we are confident we would have imposed an even longer suspension; thus, a consecutively imposed suspension is in order. See In re Disciplinary Proceedings Against Voss, 2015 WI 104, ¶24, 365 Wis. 2d 442, 871 N.W.2d 859. Adding a six-month consecutive suspension to the one-year suspension ordered in Rosin I is a result that fits comfortably within our case law. See Hotvedt, 372 Wis. 2d 68 (citing In re Disciplinary Proceedings Against Brown, 2005 WI 49, 280 Wis. 2d 44, 695 N.W.2d 295) (imposing a stipulated 18-month suspension on an attorney who, among other things, converted over $16,000 in fees belonging to his law firm, made multiple misrepresentations to

his law partner and associate, and made misrepresentations to the OLR). We trust that lengthening Attorney Rosin's suspension in this way will drive home the importance of his professional obligations, encourage other attorneys to deal forthrightly with their employers, and repair the public confidence in the legal profession that is inevitably damaged by cases such as this.

¶25 Accordingly, we accept the stipulation and impose the requested six-month suspension, to run consecutively to the one-year suspension that we imposed in Rosin I and that recently expired on May 25, 2024.[5] We do not order restitution; as mentioned above, the OLR has not requested it, and Attorney Rosin has been obligated through a civil judgment to repay the funds he owes to Firm 1. However, we deem it appropriate to require, as a condition of reinstatement of his Wisconsin law license, that Attorney Rosin satisfy this judgment. See Disciplinary Proceedings Against Krill, 2020 WI 20, ¶58 n.15, 390 Wis. 2d 466, 938 N.W.2d 589. Because the stipulation was filed at the outset of this proceeding, thereby avoiding litigation costs and the need to appoint a referee, we impose no costs on Attorney Rosin.

---

[5] We note that, given the issuance date of this decision, this consecutively imposed suspension has about a one-month retroactive period. We have previously held that a retroactive suspension is generally not favored in the absence of some "compelling circumstance." See In re Disciplinary Proceedings Against Boyd, 2009 WI 59, ¶34, 318 Wis. 2d 281, 767 N.W.2d 226. Such a circumstance is present here given the modest retroactive period of the suspension, and given that Attorney Rosin's misconduct in this case occurred before his misconduct in Rosin I. See In re Disciplinary Proc. Against Schoenecker, 2016 WI 27, ¶17, 368 Wis. 2d 57, 878 N.W.2d 163.

¶26 IT IS ORDERED that the license of Kevin R. Rosin to practice law in Wisconsin is suspended for a period of six months, to run consecutively to the discipline imposed in Disciplinary Proceedings Against Rosin, 2023 WI 32, 407 Wis. 2d 1, 988 N.W.2d 681, and therefore effective as of May 25, 2024.

¶27 IT IS FURTHER ORDERED that, as a condition of reinstatement of his license to practice law in Wisconsin, Kevin R. Rosin shall satisfy the judgment issued against him and in Firm 1's favor in connection with the misconduct described herein.

¶28 IT IS FURTHER ORDERED that Kevin R. Rosin shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶29 IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement. See SCR 22.28(3).