In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Mark S. BROWN, Attorney at Law:

OFFICE OF LAWYER REGULATION, Complainant,

v.

Mark S. BROWN, Respondent.

Supreme Court

*No. 2005AP205–D. Decided April 22, 2005.*

2005 WI 49

(Also reported in 695 N.W.2d 295.)

¶ 1. PER CURIAM. We review the stipulation filed by Attorney Mark S. Brown and the Office of Lawyer Regulation (OLR) pursuant to SCR 22.12[1] concerning Attorney Brown's professional misconduct in converting fees belonging to his law firm to his personal use. The parties stipulated that the appropriate discipline to impose for that professional misconduct is the suspension of Attorney Brown's license to practice law in Wisconsin for 18 months.

¶ 2. We approve the stipulation and adopt the stipulated facts and conclusions of law. We agree that the seriousness of Attorney Brown's misconduct warrants the suspension of his license to practice law. We also accept the parties' stipulation that an 18–month suspension is appropriate discipline.

¶ 3. Attorney Brown was admitted to practice law in Wisconsin in 1998. He currently resides in South Carolina. He has not previously been disciplined. In

---

[1] SCR 22.12 provides: Stipulation.

(1) The director may file with the complaint a stipulation of the director and the respondent to the facts, conclusions of law regarding misconduct, and discipline to be imposed. The supreme court may consider the complaint and stipulation without the appointment of a referee.

(2) If the supreme court approves a stipulation, it shall adopt the stipulated facts and conclusions of law and impose the stipulated discipline.

(3) If the supreme court rejects the stipulation, a referee shall be appointed and the matter shall proceed as a complaint filed without a stipulation.

(4) A stipulation rejected by the supreme court has no evidentiary value and is without prejudice to the respondent's defense of the proceeding or the prosecution of the complaint.

June 1998, Attorney Brown began working as an independent contractor for the Wessel Law Firm. Attorney Brown's pay was based on a percentage of the fees he collected. He was not permitted to have independent clients, and he was required to turn over all earned legal fees to the Wessel Law Office.

¶ 4.   In 2002, Attorney Brown and Attorney Keith Wessel formed Wessel, Brown & Associates LLC. All earned legal fees were to be processed through the law firm. In June 2004, Attorney Brown approached Wessel with a $2000 cashier's check, alleging the check had mistakenly been made payable to the law firm rather than to Attorney Brown personally. Attorney Brown asked Wessel to deposit the check into the firm's operating account and issue Brown a $2000 check. Wessel declined to do this. Several weeks later, Attorney Brown approached Kelly Mueller, one of the law firm's associates, who did the firm's bookkeeping. Attorney Brown gave Mueller the same $2000 cashier's check with instructions to deposit it to the firm's operating account. Attorney Brown represented to Mueller that the check was in payment of a $2000 retainer fee from a client. Attorney Brown told Mueller that the client had paid the retainer fee in cash and in lieu of the cash Attorney Brown was giving the law firm the cashier's check that the bank had mistakenly made payable to the law firm rather than to Brown personally.

¶ 5.   The law firm subsequently discovered that the client's retainer fee was actually $1000, rather than $2000 and that the client had paid the amount not in cash but via a check payable to Attorney Brown. Attorney Brown altered the firm's copy of the client's signed fee agreement to make it appear that the retainer had been $2000. The $2000 cashier's check actually represented fees paid by another client who had paid a $2000

flat fee retainer to the law firm about one month earlier. Attorney Brown had misrepresented to the firm that he was taking that case pro bono.

¶ 6.  In early July 2004, Wessel wrote Attorney Brown a memo advising Brown that he was compelled to report to the OLR concerning Brown's diversion of client funds. Wessel further advised Brown that he wished to dissolve their partnership. Brown informed Wessel he would self-report his conduct to the OLR.

¶ 7.  On July 14, 2004, Brown addressed a letter to the OLR stating that between May 2003 and June 2004, he had taken approximately six fee payments, totaling approximately $6180 that belonged to the law firm. He also reported that he had recently received two retainers totaling $3000 that he attempted to personally negotiate. Both retainers were eventually turned over to the law firm.

¶ 8.  OLR staff asked Attorney Brown for additional information. In late August 2004, Brown, through his counsel, indicated that all the funds had been taken between June 2003 and June 2004, and he identified seven clients whose fees he had personally kept. Those fees totaled $8180. Attorney Brown explained the discrepancy between that figure and the $6180 he had previously reported by saying that when he sent his initial letter to the OLR he had forgotten to include a $2000 payment he received in February 2004. Brown informed the OLR he was totally forthcoming about the fees he had taken once he was confronted about his conduct. He acknowledged he had not reported the fees he had personally taken in 2003 on his state and federal income tax returns and that he would need to file amended returns.

¶ 9.  Attorney Brown explained his actions by saying that he had developed a gambling problem that

caused financial problems. He acknowledged full responsibility for his actions and said he had been attending weekly meetings of Gamblers Anonymous.

¶ 10. OLR staff contacted Attorney Wessel and inquired whether Wessel was satisfied that the seven clients Brown had identified were the only clients whose fees Brown had taken from the law firm. Despite Brown's assertion that he had been forthcoming about all fees he had taken after Wessel confronted him, Wessel indicated the letter from OLR staff was the first itemization he had received naming the clients and the amounts Brown had taken.

¶ 11. In late September 2004, Attorney Brown sent a memo to Wessel and Mueller stating he believed the total amount of funds he had diverted from the law firm was $8180. Through a review of payment records, Mueller identified other potential misappropriations, some dating back to 1998. Attorney Brown subsequently acknowledged 11 additional misappropriations that he had not previously reported to the OLR or the law firm. Brown then said he believed the total amount he had diverted was about $16,967.92. Some of the acknowledged misappropriations occurred in 1998, 1999 and 2000.

¶ 12. Brown and Wessel entered into a dissolution agreement on November 1, 2004. As part of the agreement, Wessel received credit for the fees Brown had taken from the firm, plus an additional $7500 in damages. Attorney Brown still owes the law firm approximately $2500 in restitution and damages.

¶ 13. Attorney Brown and the OLR have stipulated that by converting over $16,000 in fees belonging to his law firm to his personal use, by attempting to convert another $3000 in fees from two other clients, by failing to report fee income on his personal income tax

returns, by altering the retainer amount on his firm's copy of a previously-signed retainer agreement, and by making multiple misrepresentations to his law firm partner and associate, Attorney Brown violated SCR 20:8.4(c).[2]

¶ 14. The parties further stipulated that by misrepresenting the amount of fees that he misappropriated from his law firm in two letters addressed to the OLR, by failing to disclose a number of misappropriations in response to a direct inquiry from OLR staff, and by misrepresenting in response to the OLR's inquiry that he had been fully forthcoming about all fees he had taken when confronted by his partner, Attorney Brown violated SCR 22.03(6).[3]

¶ 15. The stipulation states that the terms were not bargained for or negotiated between the parties. Attorney Brown represents that he fully understands the misconduct allegations, he fully understands the ramifications should the court impose the stipulated level of discipline, he fully understands his right to contest the matter, he has consulted with and retained counsel, and he entered into the stipulation knowingly and voluntarily. The stipulation also notes that the parties agree that an appropriate level of discipline to impose in response to Attorney Brown's misconduct is an 18–month suspension of his license to practice law in Wisconsin.

---

[2] SCR 20:8.4(c) provides: "It is professional misconduct for a lawyer to: (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[3] SCR 22.03(6) provides: "(6) In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance."

¶ 16. We adopt the findings of fact and conclusions of law to which the parties have stipulated concerning Attorney Brown's professional misconduct. We determine that the seriousness of the misconduct warrants the suspension of Attorney Brown's license to practice law for 18 months.

¶ 17. IT IS ORDERED that the license of Mark S. Brown to practice law in Wisconsin is suspended for a period of 18 months, effective the date of this order.

¶ 18. IT IS FURTHER ORDERED that Attorney Brown comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.