**2025 WI 44**

# Supreme Court of Wisconsin



IN THE MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
MATTHEW V. BURKERT, ATTORNEY AT LAW

OFFICE OF LAWYER REGULATION,
*Complainant,*

*v.*

MATTHEW V. BURKERT,
*Respondent.*

No. 2022AP1926-D

Decided September 12, 2025

ATTORNEY DISCIPLINARY PROCEEDING

¶1    PER CURIAM.  In this attorney disciplinary proceeding, we review the report and recommendation of the referee, the Hon. Karen L. Seifert. Based on Attorney Matthew V. Burkert's stipulation and his no-contest plea to two counts of professional misconduct involving a substantial number of representations and incidents relating to his former law firm, the referee recommended that this court suspend Attorney Burkert's license to practice law in Wisconsin for a period of 18 months and that it order Attorney Burkert to pay restitution to his former firm in the amount of $24,358.50. As neither party has appealed from the referee's report and recommendation, we review this matter pursuant to Supreme Court Rule (SCR) 22.17(2).[1]

---

[1] Supreme Court Rule 22.17(2) states that "(i)f no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the

IN THE MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
ATTORNEY MATTHEW V. BURKERT
Per Curiam

¶2    Having reviewed the parties' stipulation, the supporting memorandum filed by the Office of Lawyer Regulation (OLR), the referee's report, and the record in this matter, we agree with the referee that the factual allegations of the complaint support a legal conclusion that Attorney Burkert committed the violations of the Rules of Professional Conduct charged against him. We conclude, however, that a two-year suspension is the appropriate level of discipline to be imposed under the facts of this case. We order Attorney Burkert to pay the stipulated amount of restitution to his prior firm, which addresses Attorney Burkert's conversion of fees due to that firm for four representations. Consistent with the parties' stipulation, we do not order Attorney Burkert to pay a specific amount of restitution for the other representations that are at issue in this proceeding, although we do require Attorney Burkert to demonstrate that all claims relating to his conversion of fees owed to his prior firm be resolved as a condition of the filing of a petition for the reinstatement of his license. Finally, we order that Attorney Burkert pay the costs of this disciplinary proceeding in the amount of $4,875.21.

¶3    Attorney Burkert was admitted to the practice of law in Wisconsin in July 2004. He has practiced in the southeast part of the state. He most recently practiced in his own firm in Brookfield. He has not previously been the subject of professional discipline.

¶4    The OLR filed both an original complaint and an amended complaint. Attorney Burkert filed answers to both of them. His answer to the amended complaint admitted many of the factual allegations in the complaint, but for many other allegations, including those that described what he had done, he responded that he lacked sufficient knowledge and recollection to admit or deny, which had the effect of denying the allegation. For instance, he gave that response to an allegation that he had used the resources of his prior law firm to create a personal limited liability company (LLC). He also gave that response to allegations that he had deflected a paralegal's attempt to file an annual report for that LLC. In other instances, his responses attempted to minimize his conduct or to claim that he had offered to or attempted to rectify his conduct.

referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline."

¶5 Ultimately, after approximately 22 months of litigation and with the disciplinary hearing approaching, Attorney Burkert entered into a "Comprehensive Stipulation" with the OLR. In the stipulation, Attorney Burkert withdrew his answer to the amended complaint and agreed to enter a plea of no contest to the two counts of misconduct alleged in the amended complaint. Attorney Burkert stipulated that the referee could use the allegations of the OLR's amended complaint, many of which he had previously denied due to an alleged lack of knowledge or recollection, as the factual basis for his no-contest plea. The referee accepted the stipulation and relied on the facts set forth in the amended complaint.

¶6 The relevant facts underlying the charges against Attorney Burkert, as set forth in the amended complaint, can be summarized as follows. In 2014, Attorney Burkert entered into an agreement with three other attorneys to form a law firm. In 2016, three of the four original owners entered into an amended and restated operating agreement. As a result of that amended agreement, the law firm became known as Sorrentino Burkert Risch LLC (SBR). By 2019, Attorney Burkert began considering leaving SBR due to a belief that the firm's bonus structure was unfair. In February 2019, while still a member of the SBR firm, Attorney Burkert incorporated MZR Capitol, LLC, which he subsequently changed to MZR Advisors, LLC (MZR). Attorney Burkert used SBR resources to create MZR. He had SBR staff file the originating documents, had SBR pay the filing fee, and had SBR staff obtain an employer identification number from the Internal Revenue Service for MZR.

¶7 In October 2019 Attorney Susan Sorrentino sent an email to all SBR attorneys, asking them to complete an "Outside Interest Supplement" form as part of the firm's renewal of its legal malpractice insurance policy. The form required each attorney to list the name of every entity in which the "lawyer listed on the application is an Officer, Director, Shareholder, Member, Employee of, or exercises fiduciary control over." Attorney Burkert disclosed his involvement in two other LLCs, but he did not disclose his ownership interest in MZR.[2]

---

[2] In his answer to the amended complaint, Attorney Burkert admitted that he had failed to disclose his ownership of MZR, but attempted to explain this by asserting that at the time MZR was inactive.

¶8     In March 2020 SBR received notice that MZR's annual report was due to be filed. A SBR paralegal asked Attorney Burkert if she should file the report. After initially stating that he would gather the necessary information for her to do so, Attorney Burkert told her that, "on second thought," she should just send him copies of the notice because "[t]he client may want to handle this on its own." He did not disclose that he owned MZR.

¶9     On July 31, 2020, Attorney Burkert left SBR. In the ensuing weeks and months, SBR learned of the existence of MZR and also discovered multiple billing irregularities related to clients for whom Attorney Burkert had performed legal services during his time with the firm. Attorney Sorrentino ultimately filed a grievance with the OLR regarding Attorney Burkert's conduct. A number of instances of his misconduct are set forth below.

¶10     The first representation at issue involved client C.W. Attorney Burkert and two other SBR employees provided legal services to C.W. In January 2019 SBR issued invoice 7226 to C.W. in the amount of $7,276.50 for work performed from February 2018 to January 2019. Between February 2019 and March 2020, Attorney Burkert and a SBR paralegal performed additional services in the amount of $4,307.00. On February 26, 2020, Attorney Burkert sent an email to C.W., apologizing for not sending C.W. an invoice at the end of 2019, advising that he would be sending an invoice for the previously unbilled services, and promising a discount due to the lateness in submitting an invoice. Importantly, Attorney Burkert's email advised C.W. that his upcoming invoice "may come through an affiliate firm of mine, MZR Advisors LLC." Attorney Burkert explained that he did not want C.W. "to think the invoice is fraudulent or something." On May 31, 2020, while he was contemplating leaving SBR, he directed SBR's accounting department to write off the $4,307.00 in unbilled time.

¶11     In August 2020, after Attorney Burkert had left SBR, the firm notified C.W. that Attorney Burkert had left and enclosed a reminder that invoice 7226 remained outstanding. Unbeknownst to SBR, C.W. had already paid the $7,276.50 he owed SBR to MZR. When asked about this by the OLR, Attorney Burkert claimed that his sending of a MZR invoice to C.W. for $7,276.50 had been "inadvertent." He subsequently refunded C.W.'s $7,276.50 to C.W. and directed him to pay those fees to SBR, which C.W. then did. Attorney Burkert's actions in this regard occurred after SBR

had informed him that it suspected him of fraudulent conduct regarding the C.W. representation.[3]

¶12     The second representation at issue involved client E.N. After being referred by another attorney, E.N. retained Attorney Burkert and SBR to draft two documents necessary for E.N. to purchase an ownership interest in his employer. Attorney Burkert opened a client matter in SBR's billing system and sent emails regarding the matter using his SBR account. In addition, SBR's computer system shows that the last modifications made to the documents were made by a SBR paralegal. Upon completion of the two documents, Attorney Burkert sent an email to the referring attorney, in which he advised that he would "likely bill [E.N.] through my affiliate firm—MZR Advisors LLC." Attorney Burkert said he was advising the attorney of this fact "in case [E.N.] is confused about the invoice." Attorney Burkert did not have SBR send an invoice for his legal services; rather, he sent a MZR invoice to E.N. for the services, which E.N. paid. When the OLR asked Attorney Burkert about this matter, Attorney Burkert claimed that he did not remember using SBR resources to complete the work for E.N., that he had used his personal computer, and that if any documents had been saved on SBR's document management system, it had been "unintentional."

¶13     Next, Attorney Burkert and three other SBR employees provided legal services to Selzer-Ornst Construction in connection with its acquisition of ABCO Building Corporation. On July 31, 2019, SBR issued an invoice to Selzer-Ornst in the amount of $4,970.00 for services provided from June through July 2019.  On November 30, 2019, SBR issued another invoice for $5,040.00 for services provided from October through November.  Selzer-Ornst did not pay SBR for either invoice. From December 2019 through February 2020, SBR provided an additional $9,138.50 in legal services, but those services were not billed to Selzer-Ornst, as Attorney Burkert directed SBR's accounting department to "hold" the

---

[3] Although Attorney Burkert's answer to the amended complaint averred that he had refunded the funds to C.W. and had instructed him to pay those funds to SBR, he denied that his actions had occurred after being informed that SBR suspected him of fraudulent conduct, on the basis that the attorney representing SBR had made only a "vague threat" about his conduct.

invoice. In all, SBR provided $19,148.50 in legal services to Selzer-Ornst, but it was not paid for any of those services.

¶14    Unbeknownst to SBR, on April 6, 2020, while he was still a member of that firm, Attorney Burkert issued an invoice from MZR to Selzer-Ornst in the amount of $20,000.00 for "Legal services rendered in connection with the acquisition of ABCO" and other related matters. After Attorney Burkert left SBR in July 2020, SBR notified Selzer-Ornst that it had no record of any payments having been paid on its account. Selzer-Ornst responded that it had "issued payment to 'MZR Advisors' in the amount of $20,000.00 on 6/10/2020." As a result of subsequent email exchanges, Attorney Sorrentino of SBR discovered that SBR's outstanding invoices were for the same legal services described in the MZR invoice that Attorney Burkert had sent to Selzer-Ornst. Since Selzer-Ornst had already paid MZR, Attorney Sorrentino acknowledged to Selzer-Ornst that further collection attempts by SBR would result in Selzer-Ornst being required to pay twice for the same legal services. Attorney Burkert did not remit any of the fees to SBR for its work for Selzer-Ornst at least through the time of the OLR's amended complaint in January 2024 (more than three and a half years after he had improperly converted those funds to his own use). Indeed, since the September 2024 Comprehensive Stipulation used the future tense that Attorney Burkert "will pay restitution to SBR" for various matters, including the Selzer-Ornst representation, it appears that Attorney Burkert held onto these converted funds for more than four years.

¶15    The next representation at issue involved Cox Plumbing. Attorney Burkert and seven other employees of SBR provided legal services to Cox Plumbing that totaled over $42,000.00 as of August 31, 2019. After Attorney Burkert left SBR in July 2020, Attorney Sorrentino called the former president of Cox Plumbing to confirm that this balance remained outstanding. In response, Cox Plumbing told Attorney Sorrentino that it had provided "at least $20,000" worth of plumbing services, and possibly more, to Attorney Burkert personally as a barter to pay for the legal services provided by SBR. When questioned by the OLR, Attorney Burkert acknowledged that he had received plumbing services from Cox Plumbing and that he could not recall making any payment to Cox Plumbing for those services, but he claimed that he did not agree to exchange plumbing services for legal work. As of the time of the amended complaint, SBR still had not received any payment for the legal services it provided to Cox Plumbing.

¶16     The fifth matter described in the amended complaint involved SBR's representation of Cherney Brothers and M.B. (collectively, Cherney Brothers). Between September 2019 and May 2020, Attorney Burkert and another employee of SBR provided $2,390.00 in legal services to Cherney Brothers. On July 9, 2020, just weeks before he left the firm, Attorney Burkert directed SBR's accounting department to write off the entire Cherney Brothers bill. After Attorney Burkert left SBR, it issued an invoice to Cherney Brothers for the services it had provided. After receiving this invoice, Cherney Brothers informed SBR that it had already sent payment in the amount of $17,350.00 to MZR on May 21, 2020. When the OLR questioned Attorney Burkert about this matter, he responded that the MZR invoice had been for a "combination of investment banking services and legal work." He once again claimed that if the bill for the $2,390 in legal services had been part of the MZR bill, it had been included "inadvertently." He said that if that was the case, he would reimburse SBR for that amount. As a result, SBR did not attempt to collect the amount from Cherney Brothers. As with the fees due from Selzer-Ornst, Attorney Burkert had not reimbursed SBR as of the time of the amended complaint, and likely not as of the time of the Comprehensive Stipulation.

¶17     Between April 2018 and November 2019, Attorney Burkert and three other SBR employees provided $9,198.00 in legal services to a client by the name of Cottage LLC. As he had done with other clients, in early July 2020, Attorney Burkert directed SBR's accounting department to write off the entire bill for Cottage LLC. After Attorney Burkert left SBR, it learned that Attorney Burkert had agreed to write off the invoice in exchange for a 10% ownership interest in Cottage LLC. This was confirmed by a representative of Cottage LLC in November 2020, who stated that "Cottage LLC had a deal with [Attorney Burkert] [that he] could do the 10% ($180,000) buy in based on providing free legal services from SBR, rather than paying the $180,000," which meant that Cottage LLC had no outstanding debt for legal services to SBR. As a result of that confirmation, SBR did not attempt to collect any of the outstanding legal fees from Cottage LLC. During the OLR's investigation, Attorney Burkert procured an August 25, 2021 letter from that same Cottage LLC representative, which stated that after "internal discussions" and "a review of our records," the ownership interest granted to Attorney Burkert "was granted solely in consideration of Mr. Burkert's procurement of three equity investors" and not "in consideration of legal services rendered by him or any other person." Attorney Burkert told the OLR that he received the 10% ownership interest prior to Cottage LLC becoming a client of SBR and prior to the

formation of MZR. He claimed that he logged all of the time he spent providing services to Cottage LLC in SBR's billing system and that SBR could still bill those fees to Cottage LLC, even though he had already directed SBR's accounting department to write off those fees in July 2020. Further, he told the OLR that "for what it is worth, the equity in the company is now negligible, worth far less than $9,000."

¶18   The final matter at issue involved SBR's representation of Jendrach, Dobogai, Lindseth, Inc. (JDL). Between February and April 2018, Attorney Burkert and another SBR attorney provided $968.50 in legal services to JDL, as reflected in invoices 6183 and 6264. On June 8, 2023, SBR sent a letter to JDL, attempting to collect its past due balance, which included the $968.50 from invoices 6183 and 6264. After receiving SBR's letter, a JDL representative informed SBR that JDL had previously issued payment for invoices 6183 and 6264 in the amount of $968.50 to Attorney Burkert personally.

¶19   It is important to note that the OLR's amended complaint contained only two counts—first, that Attorney Burkert had violated SCR 20:8.4(c)[4] by engaging in a pattern of deceit and dishonesty, and second, that he had violated a standard of conduct set forth in *In re Disciplinary Proceedings Against Shea*, 190 Wis. 2d 560, 527 N.W.2d 314 (1995), enforced via SCR 20:8.4(f),[5] imposing a fiduciary duty and a duty of honesty to an attorney's law firm. Even though there are only two counts, those violations apply to each of the seven representations discussed in the amended complaint and to Attorney Burkert's failure to disclose the existence of his personal LLC to SBR. Thus, one could view this matter as involving 16 counts of misconduct.

¶20   Given the factual basis summarized above and Attorney Burkert's no-contest plea, the referee determined that the allegations of the complaint adequately supported the legal conclusion that Attorney Burkert

---

[4] SCR 20:8.4(c) states that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[5] SCR 20:8.4(f) states that it is professional misconduct for a lawyer to "violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers."

had committed the ethical violations alleged in the OLR's amended complaint.

¶21    In the OLR's original and amended complaints, it requested the imposition of a two-year suspension. In the stipulation, however, the OLR changed its request for discipline and agreed with Attorney Burkert that an 18-month suspension would be an appropriate level of discipline for Attorney Burkert's professional misconduct. The only reasons for this change that the OLR provided in either the stipulation or its supporting memorandum were (1) the fact that Attorney Burkert had now agreed to enter a no-contest plea and (2) his "agreement to voluntarily pay restitution to his former firm in the amount of $24,358.50." The stipulation made clear, however, that Attorney Burkert was agreeing to repay only certain funds that he had received as a result of the misconduct described in the amended complaint (specifically funds related to legal fees for clients E.N, Selzer-Ornst Construction, Chenery Brothers, and JDL). The restitution relating to funds Attorney Burkert received from the other clients identified in the amended complaint "will be left to [Attorney] Burkert and his former firm to resolve outside this disciplinary proceeding." The OLR's accompanying memorandum cited two cases that it believes support an 18-month suspension, *In re Disciplinary Proceedings Against Hotvedt*, 2016 WI 93, 372 Wis. 2d 68, 888 N.W.2d 393, and *In re Disciplinary Proceedings Against Koenig*, 2015 WI 16, 361 Wis. 2d 16, 859 N.W.2d 105, which we will discuss below.

¶22    With respect to the appropriate sanction, the referee stated that aggravating factors included the fact that Attorney Burkert has practiced law for a substantial amount of time (20 years). In addition, Attorney Burkert had engaged in a pattern of deceit, by covertly setting up a separate entity and then diverting legal fees to himself or that entity in multiple instances over an extended period of time. On the mitigating side of the ledger, the referee noted that Attorney Burkert had agreed now to pay restitution to his former law firm and that he had no prior discipline. Having reviewed the cases cited by the OLR, she concluded that an 18-month suspension would be consistent with precedent and would be sufficient to satisfy the disciplinary factors this court has identified. *See, e.g., In re Disciplinary Proceedings Against Carroll*, 2001 WI 130, ¶40, 248 Wis. 2d 662, 636 N.W.2d 718.

¶23    When we review a referee's report in an attorney disciplinary proceeding, we will affirm the referee's findings of fact unless they are found to be clearly erroneous, but we review the referee's conclusions of

law on a de novo basis. *In re Disciplinary Proceedings Against Inglimo*, 2007 WI 126, ¶5, 305 Wis. 2d 71, 740 N.W.2d 125. We determine the appropriate level of discipline to impose in light of the particular facts of each case, independent of the referee's recommendation, but benefiting from it. *In re Disciplinary Proceedings Against Widule*, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶24 Given the Comprehensive Stipulation and Attorney Burkert's no-contest plea, there is no dispute about the facts or the presence of the ethical violations as alleged in the two counts of the OLR's amended complaint for the eight matters discussed therein. We therefore adopt the allegations of the complaint as the factual basis for our decision, and we agree with the referee that those facts amply support the legal conclusion that Attorney Burkert violated SCR 20:8.4(c) and the rule set forth in *Shea* with respect to each of the eight matters described in the amended complaint.

¶25 The primary issue we must resolve in this matter is the appropriate level of discipline under the facts of this case. As the referee noted, we consider a number of factors in determining the appropriate discipline to impose, which include: (1) the seriousness, nature, and extent of the misconduct; (2) the level of discipline needed to protect the public, the courts, and the legal system from a repetition of the attorney's misconduct; (3) the need to impress upon the respondent attorney the seriousness of the misconduct; and (4) the need to deter other attorneys from committing similar misconduct. *See In re Disciplinary Proceedings Against Scanlan*, 2006 WI 38, ¶72, 290 Wis. 2d 30, 712 N.W.2d 877 (citation omitted). We generally try to fashion a sanction that fits within the framework of our prior decisions, but, as we have noted, each case ultimately must turn on its specific facts. *In re Disciplinary Proceedings Against Malloy*, 2025 WI 39, ¶64, __ Wis. 2d __, 24 N.W.3d 552.

¶26 There are a number of prior disciplinary cases that involve the diversion of fees from the respondent attorney's law firm to the respondent personally. Unless there have been additional factors or misconduct present, there is support in those decisions for imposing a suspension in the range of 18 months to two years. *See, e.g., Hotvedt*, 372 Wis. 2d 68, ¶17 (imposing a stipulated 18-month suspension); *Koenig*, 36 Wis. 2d 16, ¶¶16, 17 (imposing a stipulated two-year suspension and ordering restitution to respondent's former law firm); *In re Disciplinary Proceedings Against Brown*, 2005 WI 49, ¶16, 280 Wis. 2d 44, 695 N.W.2d 295 (imposing stipulated 18-

month suspension); *In re Disciplinary Proceedings Against Cotter*, 171 Wis. 2d 373, 380, 491 N.W.2d 475 (1992) (agreeing with the referee's recommendation to impose a two-year suspension).

¶27 In this instance, we believe that the facts of this case call for a suspension at the higher end of this range, and we therefore impose a two-year suspension, despite the stipulated recommendation for a slightly shorter suspension. The OLR initially sought a two-year suspension, but apparently changed its position in light of Attorney Burkert's decision to enter a no-contest plea and to agree to pay partial restitution to his former law firm.

¶28 There are several reasons why a two-year suspension is warranted in this case. As the referee noted, this was not an isolated lapse in judgment. Attorney Burkert had a plan. He created a separate entity and, whether or not it was his original intention, he intentionally used that entity on multiple occasions to defraud both his clients and his law firm and to convert legal fees that were owed to his law firm to his own personal use. He did this over an extended period of time.

¶29 More importantly, the facts of this case indicate that Attorney Burkert has not truly accepted full responsibility for his misconduct, much less expressed remorse for it. In both *Hotvedt* and *Brown*, where we imposed a stipulated 18-month suspension, the respondent attorney had agreed to pay full restitution to the former law firm. *Hotvedt*, 372 Wis. 2d 68, ¶15 ("he reached an agreement with his former firm regarding restitution"); *Brown*, 280 Wis. 2d 44, ¶12 (in addition to self-reporting his misconduct, Attorney Brown reached a dissolution agreement with his former partner prior to initiation of disciplinary proceedings whereby Attorney Brown agreed to repay all fees improperly taken from the law firm, plus an additional $7,500 in damages). On the other hand, in *Cotter*, where a two-year suspension was imposed, the referee expressly commented that Attorney Cotter had accepted "little, if any, responsibility for his misconduct." 171 Wis. 2d at 379-80.

¶30 In this case, we see little indication that Attorney Burkert has truly accepted responsibility for all of his misconduct. Although his misconduct was discovered long before the OLR filed its original and amended complaints, Attorney Burkert had not reached any agreement with SBR prior to the filing of those complaints about reimbursing the firm for the legal fees he had improperly diverted to himself. Indeed, in his

answers to the amended complaint, his responses to the allegations repeatedly attempted to offer excuses for or to minimize his misconduct. Although he was required to disclose the existence of MZR on the Outside Interest Supplement form because, at a minimum, he was a member of that LLC, he attempted to minimize his hiding of that entity from his law firm by claiming that it had not been active as of the date of the form. He repeatedly claimed that his actions had been inadvertent or unintentional. He did not admit that he had intentionally engaged in a course of conduct to essentially steal fees that were owed to the law firm. Attorney Burkert litigated the charges against him for the better part of two years and then changed his plea to no contest only when faced with the rapidly approaching disciplinary hearing. Even then, while Attorney Burkert agreed to plead no contest and to allow the referee and this court to use the factual allegations of the complaint as a basis for his plea, he agreed to pay only partial restitution to SBR. With respect to at least two of the representations at issue, he did not make any commitment to pay a specific amount of restitution, or even to pay restitution at all. Those matters were left to be resolved potentially by him and SBR, but there was no commitment by Attorney Burkert that they would be resolved.

¶31 Given the lack of evidence that Attorney Burkert has truly taken to heart the seriousness of his misconduct and therefore given the risk that he could engage in this misconduct or other misconduct in the future, a strong message needs to be sent to him and to other attorneys that this kind of deceitful misconduct will not be tolerated. Consequently, we determine that it is necessary to suspend Attorney Burkert's license to practice law in Wisconsin for a period of two years.

¶32 With respect to restitution, as noted above, Attorney Burkert stipulated to pay restitution to SBR in the amount of $24,358.50. We will therefore include a restitution order in that amount in our mandate. We are concerned, however, with the additional restitution that it appears Attorney Burkert owes SBR. Rather than remand this disciplinary proceeding back to the referee and require the parties and the referee to litigate those issues to completion, we will make it an explicit condition of any petition for reinstatement by Attorney Burkert that he prove that he has made full restitution to SBR. This is generally required by our rules regarding reinstatement petitions. *See* SCR 22.29(4)(m). We are putting Attorney Burkert on notice that we will accept no excuses for any failure to comply with this requirement. It needs to be completed before a reinstatement petition is filed.

¶33    Finally, we turn to the issue of costs. The referee has recommended that we impose the full costs of this proceeding on Attorney Burkert. The OLR has submitted an amended statement of costs indicating that the total costs of the proceeding were $4,875.21. Attorney Burkert did not object to those costs. Consequently, we require him to pay costs in that amount.

¶34    IT IS ORDERED that the license of Attorney Matthew V. Burkert to practice law in Wisconsin is suspended for a period of two years, effective as of the date of this order.

¶35    IT IS FURTHER ORDERED that within 60 days of the date of this order, Attorney Matthew V. Burkert shall pay restitution in the amount of $24,358.50 to Sorrentino Burkert Risch LLC, its successor entity, or its former members (excluding Attorney Burkert). In the event that Attorney Burkert has already made a payment in this amount to Sorrentino Burkert Risch LLC, its successor entity, or its former members, Attorney Burkert shall provide adequate documentary proof of such payment or payments to this court within 60 days of the date of this order.

¶36    IT IS FURTHER ORDERED that as a condition of the filing of any petition for reinstatement by Attorney Matthew V. Burkert, the petition shall state that Attorney Matthew V. Burkert has made full restitution to Sorrentino Burkert Risch LLC, its successor entity, or its former members (excluding Attorney Burkert) for all monies due to Sorrentino Burkert Risch that he improperly diverted or converted to his own personal use.

¶37    IT IS FURTHER ORDERED that within 60 days of the date of this order, Attorney Matthew V. Burkert shall pay to the Office of Lawyer Regulation the costs of this proceeding, which are $4,875.21.

¶38    IT IS FURTHER ORDERED that payment of restitution is to be completed prior to paying costs to the Office of Lawyer Regulation.

¶39    IT IS FURTHER ORDERED that, to the extent he has not already done so, Attorney Matthew V. Burkert shall comply with the provisions of SCR 22.26 concerning the duties of an attorney whose license to practice law has been suspended.

¶40    IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement. *See* SCR 22.29(4)(c).

¶41    REBECCA GRASSL BRADLEY, J., did not participate

IN THE MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
ATTORNEY MATTHEW V. BURKERT
Per Curiam